# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

TERRY MCNABB, and DENNIS LORENZ,
individually, and all others similarly situated

      Plaintiffs,

vs.                                   **No. CIV 99-1410 MV/DJS**

NEW YORK LIFE INSURANCE COMPANY,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiffs' Motion to Remand to State Court filed February 7, 2000 **[Doc. No. 8]** and Defendant's Motion for Leave to Supplement Opposition to Plaintiff's Motion to Remand, filed May 4, 2000 **[Doc. No. 14]**. The Court, having considered the pleadings, relevant law, and being otherwise fully informed, finds that Plaintiffs' Motion to Remand is well taken and will be **GRANTED**. The Court further finds that Defendant's Motion to Supplement is not well taken and will be **DENIED**. Finally, the Court finds pursuant to 28 U.S.C. 1447(c) that reasonable costs, including attorney fees, should be awarded to Plaintiffs for the costs incurred as a result of the removal.

## FACTUAL BACKGROUND

On November 5, 1999 Plaintiffs McNabb and Lorenz, both New Mexico residents, filed

suit against Defendant New York Life Insurance Company (New York Life), a New York corporation, in the First Judicial District Court of Santa Fe County, New Mexico. The Complaint alleges that Lorenz and McNabb purchased life insurance policies from New York Life issued, respectively, on November 10, 1994 and October 23, 1993. Both policies remain in force and, as endorsed, gave Plaintiffs the option to pay premiums annually, semi-annually, quarterly, or monthly. Lorenz chose to pay a monthly premium of $149.00 ($1,788 annually) and McNabb chose to pay a monthly premium of $227.00 ($2,724 annually). Neither policy disclosed the premiums Plaintiffs could have paid on an annual, semi-annual or quarterly basis; the dollar savings for the different payment schedules; or the annual interest rate being charged for not paying on different payment schedules. By paying on a monthly basis, Lorenz allegedly incurred, to date, additional undisclosed premium charges over the annual payment schedule in the amount of $640.00. McNabb has allegedly paid undisclosed additional premium charges in the amount of $1,158.00. Plaintiffs sued individually, and on behalf of a proposed class of similarly situated plaintiffs. The putative class consists of potentially 2.3 million New York Life Insurance policy holders. Plaintiffs allege that New York Life, by failing to disclose the premium differentials, breached its duty of full and fair disclosure and its duty of good faith and fair dealing. Plaintiffs also allege violations of the New Mexico Unfair Practices Act, the New Mexico Retail Installment Act and provisions of New Mexico's Insurance Code, as well as similar New York statutes. Plaintiffs seek compensatory damages, punitive and/or treble damages, declaratory and injunctive relief, and costs and prejudgment interest.

On December 7, 1999, Defendant New York Life filed its Notice of Removal alleging this Court had diversity jurisdiction. Plaintiffs now challenge the existence of diversity jurisdiction on

the grounds that the minimum amount in controversy of $75,000 for each Plaintiff or putative class member is not met. Defendant asserts that the amount in controversy is met on two bases: (1) the cost of complying with the injunctive relief demanded by the putative class exceeds $75,000, and (2) the punitive damages of all of the class members can be aggregated to satisfy the jurisdictional amount.

## LEGAL STANDARD

Federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994). Federal Court jurisdiction is strictly construed. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941). Any civil case filed in state court may be removed by a defendant to federal court if the case could have been brought originally in federal court. 28 U.S.C. § 1441(a). The removing party must establish that the amount in controversy exceeds $75,000.00. *See Laughlin v. KMart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995). The party seeking to invoke a federal court's jurisdiction sustains the burden of establishing that such jurisdiction is proper. *See Penteco Corp. v. Union Gas System, Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991).

## DISCUSSION

In this case, Defendant alleges that the Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) due to diversity of the parties and an amount in controversy greater than $75,000.[1] The

---

[1] 28 U.S.C. § 1332 (a) provides that district courts "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States."

parties do not contest that the dispute is between citizens of different states. Plaintiffs do, however, contest Defendant's assertion that the jurisdictional amount in controversy exists. The question before the Court, therefore, is whether Defendant has met its burden of demonstrating that the jurisdictional minimum amount of damages is present.

Defendant asserts that the jurisdictional minimum amount in controversy is met on two grounds: (1) the aggregated cost of complying with the injunctive relief for the putative class at a whole will exceed $75,000; and (2) the aggregated punitive damages sought by plaintiffs will exceed $75,000. Plaintiffs contend that Tenth Circuit law does not allow aggregation of costs of complying with injunctive relief or of punitive damages in class actions to meet the jurisdictional minimum amount in controversy. Therefore, the threshold question before the Court is whether Defendant appropriately aggregated Plaintiffs' claims to establish the requisite jurisdictional amount.

### 1. Aggregation of Claims for Injunctive Relief

When a plaintiff seeks equitable relief, the Court determines the amount in controversy by quantifying the cost to defendant to comply with the injunction. *See Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 347 (1976); *Justice v. Atchison, et. al,*. 927 F.2d 503, 504-505 (10th Cir 1991). As part of the injunctive relief sought, Plaintiffs demand that Defendant disclose the premiums and interest rates of the different payment schedules to each class member. Defendant asserts that the cost of implementing such a disclosure to the 3.9 million New York Life policyholders nationwide could cost in excess of $500,000.

The Supreme Court has long held that the "separate and distinct claims" of two or more plaintiffs may not be aggregated to satisfy the jurisdictional amount. *See Zahn v. Int'l Paper Co.*,

414 U.S. 291 (1973).[2] "[W]hen two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount . . .." *Id.* at 294. Aggregation is proper only in the limited situation where two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest. *See Snyder v. Harris*, 394 U.S. 332, 335 (1969). The fact that claims arise from the same occurrence is an insufficient justification to allow aggregation for purposes of meeting amount in controversy requirements. *Id.* The Tenth Circuit has similarly held that unless the plaintiffs are suing over a "single title or right in which they have an undivided interest" their claims could not be aggregated even if they had "a common basis of fact and law . . .." *Aetna Ins. Co. v. Chicago, Rock Island and Pacific R.R. Co.,* 229 F.2d 584, 586 (10th Cir. 1956).

In accordance with this case law, the Tenth Circuit has allowed aggregation of costs of complying with injunctive relief only where the plaintiffs seek to enforce a "common and undivided" interest. *See Lonquist v. J.C. Penney*, 421 F.3d 597 (10th Cir. 1970). In *Lonquist v.*

---

[2]     Defendant argues that *Zahn* has been overruled, as reasoned by the Fifth Circuit in *Free v. Abbott Laboratories*, 51 F.3d 524 (5th Cir. 1995), which was affirmed per curium by an equally divided Supreme Court on April 3, 2000,___ S. Ct.___, 2000 WL 339150. The Court is not persuaded by Defendant's arguments. As an initial matter, *Abbot Laboratories* involved a federal court's exercise of supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over class action members claims where one plaintiff had met the jurisdictional amount in controversy. In this case, there is no assertion of supplemental jurisdiction and no evidence that any of the Plaintiffs meet the minimum amount in controversy. Moreover, as conceded by Defendant, the equally divided opinion of the Supreme Court is not binding authority on this Court. The Court rather is bound by the tenth Circuit's decision in *Leodhart v. Western Sugar*, 160 F.3d 631, 637-641 (10th Cir. 1998), which explicitly rejected *Abbot Laboratories*. The Court will not allow Defendants to raise an entirely new issue which properly should have been addressed in initial briefing in opposition to remand. On these grounds, Defendant's Motion for Leave to Supplement their Opposition to Remand will be denied.

*J.C. Penney*, the Tenth Circuit declined to aggregate the claims of plaintiffs who were asserting that a department store was charging excessive interest rates on their separate credit accounts, on the grounds that the plaintiffs were asserting separate and distinct claims. *Id.* Defendant asserts that Plaintiffs have a common and undivided interest in the injunctive relief sought and thus the cost of complying with such relief should be aggregated to meet the jurisdictional amount. Defendant cites to *Justice v. Atchison, et. al.*, wherein as a result of flooding in Pauls Valley, Oklahoma, a class of property owners filed a class action on the grounds of continuing nuisance seeking a mandatory injunction to require the railroad to alter certain bridges and other structures to prevent future flooding. *Justice v. Atchison, et. al.*, 927 F.2d at 504-505. The Tenth Circuit, concluding that the plaintiffs' claims were common and undivided, allowed aggregation and used defendant's cost of compliance to satisfy the jurisdictional amount. *Id. Justice v. Atchison* is easily distinguishable from the instant case in that the relief sought in *Justice*, the alteration of a bridge, could not by its very nature be individually divided and tailored. In contrast, in this case, each Plaintiff is involved in a separate payment schedule, under a separate insurance policy. Prior to the commencement of this law suit, the Plaintiffs did not possess "common and undivided" claims. Each Plaintiff was issued a separate and distinct insurance policy from Defendant. Each putative class member seeks damages unique to that individual which are dependant on the type of policy issued and the payment schedule. The disclosure sought in this case could easily be divided and tailored for each individual Plaintiff. For instance, each Plaintiff will have paid a different amount, and will require a different disclosure of what the payments would have been under a different payment schedule. Finally, each Plaintiff could have sued separately to enforce their claim and must prove their claim separately. *See Amundson & Associates Art Studio v. Nat'l*

*Council on Compensation Ins., Inc.* 977 F. Supp. 1116, 1124 (D.Kan 1997) (no aggregation allowed where plaintiffs were seeking injunctive relief for alleged overcharges on workmen's compensation insurance purchased in the voluntary market.)

Even if Plaintiffs' claims present common questions of law and fact, as required for class certification, it does not necessarily follow that their rights are held in group status. *See Amundson & Associates Art Studio v. Nat'l Council on Compensation Ins., Inc.* 977 F. Supp. at 1124. Although the class action device permits these Plaintiffs to combine their claims for convenience and economy, "neither that form of action no the nature of the injunctive relief which they seek permits aggregation." *Id.*; *see also Aetna Ins. Co. v. Chicago Rock Isl. & Pac. RR Co.*, 229 F.2d at 586 (even if complaint is based on a single instrument, claimants may not aggregate their claims unless they are seeking "to enforce a single title or right in which they have an undivided interest.")

Plaintiffs in their claims for injunctive relief are not asserting a single common or undivided interest. Their damages and the relief sought are all distinct and separate and must be tailored to meet their individual insurance policies. Therefore, Defendant cannot use the aggregated value of the cost of complying with injunctive relief in order to meet the required jurisdictional amount. The Court's analysis is supported by *Friesner v. North American Company for Life and Health Insurance* and *Kollecas v. State Farm Life Insurance Company* in which a sister court in the District of New Mexico, deciding essentially an identical issue, found that insurance policy holders had separate and distinct interests, and accordingly, the cost of complying with injunctive relief could not be aggregated to meet the minimum jurisdictional amount. *Friesner v. North American Company for Life and Health Insurance*, Civ. No. 00-0023

WWD/LDS, slip op. (D.N.M., March 7, 2000); *Kollecas v. State Farm Life Insurance Company,* 99-1428 WWD/LFG, slip op. (D.N.M., February 16, 2000). Although the combined cost of complying with the disclosures sought by Plaintiffs would exceed the minimum federal jurisdictional amount, the per capita costs of compliance remain far below the required $ 75,000 minimum amount in controversy.

**B.      Aggregation of Claims for Punitive Damages**

Plaintiffs assert a variety of theories relating to punitive damages. Plaintiffs generally allege that New York Life acted in bad faith, breached its implied covenant of good faith and fair dealing, committed fraud, and breached its fiduciary duties. Defendant argues that because Plaintiffs seek these punitive damages for the putative class, the punitive damages should be aggregated to meet the minimum amount in controversy. Defendant correctly states that punitive damages should be aggregated when multiple plaintiffs seek to "enforce a single title or right, in which [the putative class] has a common and undivided interest." *Zahn v. International Paper Co.*, 414 U.S. at 294; *Snyder v. Harris*, 394 U.S. at 335. Here, however, the Court has already clarified that the Plaintiffs are enforcing distinct and separate rights, rather than a common and undivided interest. Thus, the question, is whether the punitive damages may be aggregated to meet the jurisdictional amount where there is no single, common, or undivided title or right. The Defendant argues that under New Mexico law, punitive damages are meant to punish and deter, rather than compensate the plaintiff, and therefore should be viewed as a collective right in which class members hold a common and undivided interest. While the Tenth Circuit has not addressed this issue, the Circuits are split on whether aggregation of punitive damages should be allowed to satisfy the jurisdictional amount, absent a showing of a single enforceable right or title. The

Second and Seventh Circuits have refused to allow aggregation, while the Eleventh Circuit has allowed aggregation to meet the jurisdictional threshold. *See Gilman v. BHC Securities, Inc.,* 104 F.3d 1418 (2nd Cir. 1997); *Anthony v. Security Pacific Financial Services,* 75 F.3d 311, 315 (7th Cir. 1996); *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1359 (11th Cir. 1996). The Fifth Circuit has vacillated on the issue, once allowing aggregation under Mississippi law in *Allen v. R& H Oil & Gas Co.*, 63 F.3d 1326 (5th Cir. 1995), but later refusing to aggregate punitive damages in *Ard v. Transcom Gas Pipe Line Corp.*, 138 F.3d 596, 601 (5th Cir. 1998). Several lower courts in this district and circuit have followed the Second Circuit in *Gilman v. BHC Securities, Inc.*, which relying on *Snyder* and *Zahn* barred aggregation of punitive damages absent a prior determination that the underlying claims "assert a single title or right." *Gilman v. BHC Securities, Inc.*, 104 F.3d at 1430; *see, e.g.*, *Friesner v. North American Company for Life and Health Insurance*, Civ. No. 00-0023 WWD/LFG; *Kollecas v. State Farm Life Insurance Company,* Civ. No. 99-1428 WWD/LFG; *Weinberg v. Genl Motors Corp.*, Civ. No. 98-771 BB/LFG, slip op. at 4 (D.N.M. Oct. 19, 1998); *Harris v. Nationwide Ins. Co.*, 1999 WL 1249709, * 2 (D. Utah); *Amundson & Associates Art Studio v. Nat'l Council on Compensation Ins., Inc.* 977 F. Supp. at 1116; *Asten v. Southwestern Bell Tel. Co.*, 914 F. Supp. 430, 433 (D.Kan 1996); *see also Payne v. Volkswagon (sic) of America,* 70 F.R.D. 565, 567 (10th Cir. 1976) (improper to aggregate amount of punitive damages against two distinct defendants). Under this line of cases, punitive damages by themselves do not enjoy special status as "common or undivided" interests or rights. The courts have reasoned that "[a]llowing defendants to aggregate their punitive damages claims without first establishing this prerequisite 'would eviscerate the holdings of *Snyder* and *Zahn* and would run counter to the strict construction of the amount-in-controversy requirement those cases

mandate." *Amundson & Associates Art Studio v. Nat'l Council on Compensation Ins., Inc.* 977 F. Supp. at 1127. Likewise, this Court agrees it would be imprudent to allow the Defendant to bypass the holdings of *Snyder a*nd *Zahn* and allow a defendant to litigate in federal court based on aggregated punitive damages for claims that are wholly separate and distinct. As stated by another court in the District of New Mexico, "[s]ince the purpose of the jurisdictional amount standard is to keep petty controversies out of federal court and to keep diversity jurisdiction under some modicum of control, it seems to make little sense to permit Plaintiff to enter federal court on a magic carpet of aggregated potential punitive damages." *Weinberg v. Genl Motors Corp.*, Civ. No. 98-771 BB/LFG, slip op. at 5.

There is no way, outside of speculation, to know what the amount of individual punitive damages in this case would be. Defendant does not allege, however, that the punitive damages for each individual Plaintiff would exceed the jurisdictional requirement of $75,000. As aggregation is not appropriate without a showing of a common or undivided interest, Defendant has failed to meet its burden of proving that the individual punitive damages would meet the federal jurisdictional amount.


## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Remand **[Doc. No. 8]** is hereby **GRANTED**. The Court hereby orders this matter remanded back to the First Judicial District Court of Santa Fe County, State of New Mexico.

**IT IS FURTHER ORDERED** that Defendant's Motion for Leave to Supplement Opposition to Plaintiff's Motion to Remand [Doc. No. 14] is hereby **DENIED**.

**IT IS FURTHER ORDERED** that pursuant to 28 U.S.C. § 1447, Defendant pay

Plaintiffs' reasonable costs and expenses, including attorneys' fees, incurred as a result of the

removal.[3]

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

Attorney For Plaintiffs
Dennis McCary

Attorney for Defendant
Allen Dewey

---

[3]      Defendant argues that no attorney fees should be awarded to Plaintiff, because no bad faith has been demonstrated on the part of Defendant.  Contrary to Defendant's assertion, bad faith is not required for a court to exercise its discretion in favor of attorney fees in a remand order.  *See Daleske v. Fairfield Communications*, 17 F.3d 321, 3234 (10th Cir. 1994), *cert. denied*, 511 U.S. 1082 (1994).  Rather, the key issue is the propriety of defendant's removal. *Excell, Inc. v. Sterling Boiler & Mechanica*l, 106 F.3d 318, 320-21 (10th Cir. 1997).  In this case, not only was removal improper *ab initio*, but in addition, Defendants filed additional motions raising an issue which it had not previously raised and which the Court has concluded, was not dispositive of the issue before it.  On these grounds, the Court finds an award of attorney fees to be warranted.